UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-CR-20284-SMITH

UNITED STATES OF AMERICA

vs.

JOSE MELQUIADES CISNEROS ALARCON,

Defendant.
_____/

### FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The United States Department of Justice, Criminal Division, Fraud Section and Money Laundering and Asset Recovery Section, and the United States Attorney's Office for the Southern District of Florida (collectively, the "Government"), and the Defendant, Jose Melquiades Cisneros Alarcon ("the defendant"), stipulate and agree that the information stated herein is true and accurate and a sufficient basis for the defendant's plea of guilty to the money laundering conspiracy in violation of Title 18, United States Code, Section 1956(h) charged in the instant case. Had this matter proceeded to trial, the defendant stipulates and agrees that the Government would have proven the facts alleged below beyond a reasonable doubt and the forfeiture allegations set forth in the criminal Indictment by a preponderance of the evidence.

Empresa Pública de Hidrocarburos del Ecuador ("PetroEcuador") is the state-owned and state-controlled oil company in Ecuador. PetroEcuador performed government functions for and on behalf of Ecuador. The defendant, a citizen of Ecuador and a permanent resident of the United States who resided in the Southern District of Florida during the relevant time period, was the president and director of several companies that were based in Miami, Florida.

From in or around 2013 and continuing until at least 2015, the defendant and others, including United States citizens, knowingly and willfully agreed to use the mails and means and instrumentalities of interstate commerce, including U.S.-based companies and U.S. bank accounts, to corruptly promise to pay, and to pay, approximately $4,400,000 in bribes to PetroEcuador officials in order to influence those officials in their official capacity and to secure an improper advantage for various companies in obtaining and retaining business with PetroEcuador ("the illegal bribery scheme"). The defendant knew that this conduct was unlawful.

From in or around 2013 and continuing until at least 2015, the defendant knowingly and willfully conspired with others, including his co-defendant Armengol Alfonso Cevallos Diaz ("Cevallos") and Marcelo Reyes Lopez ("Reyes"), to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the illegal bribery scheme and to promote the carrying on of the illegal bribery scheme.

In furtherance of the conspiracy, and with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the illegal bribery scheme, as well as to promote the carrying on of the illegal bribery scheme, the defendant and his co-conspirators, among other things, created a shell company in the Southern District of Florida for the benefit of Reyes; opened a bank account in the Southern District of Florida in the name of that shell company, transferred the proceeds of the illegal bribery scheme from other bank accounts that the defendant and his co-conspirators controlled into the shell company's bank accounts and into the Panamanian bank account of a Panamanian shell company controlled by another PetroEcuador official, and used the proceeds of the illegal bribery scheme to purchase properties in the Southern District of Florida for the benefit of Reyes and a third PetroEcuador official.

2

Specifically, in or around 2013, the defendant and his co-defendant Cevallos met with Reyes, who the defendant knew to be a PetroEcuador official, in Miami, Florida and agreed, in furtherance of the conspiracy, and with the intent to conceal and disguise the proceeds of the illegal bribery scheme, as well as to promote the illegal bribery scheme, to open a shell company in the United States, O&G International Supplies Inc. ("O&G"), which the defendant would control for the benefit of Reyes. The defendant created O&G on or about January 31, 2013 in the Southern District of Florida and acted as the company's president. The defendant also opened and maintained a bank account for O&G in Miami, Florida and used it to facilitate bribe payments intended for Reyes.

On or about February 13, 2013, an Ecuadorian oil services company that was a PetroEcuador contractor transferred $1,314,733 in bribes to a Florida-based intermediary company's (Intermediary Company 1) U.S. bank account. The defendant was a director of Intermediary Company 1 and controlled its U.S. bank account. On or about that same day, an additional $1,314,733, also intended as bribes, was transferred from the same Ecuadorian oil services company to a second intermediary company's (Intermediary Company 2) U.S. bank account. The defendant was also a director of Intermediary Company 2 and had signatory authority over its U.S. bank account. Additionally, on or about February 27, 2013, $700,000 was transferred to Intermediary Company 1's U.S. bank account from an entity used to send bribes on behalf of another PetroEcuador contractor, GalileoEnergy S.A. Shortly after these transfers were received into Intermediary Company 1's U.S. bank account, the defendant signed wire transfers, on or about February 15, 2013 and on or about March 22, 2013, totaling approximately $800,000 from that U.S. bank account to O&G's U.S. bank account, which the defendant later used to purchase a property in Miami, Florida for Reyes, as described further below.

3

*J.C.*

Additional funds transferred by PetroEcuador contractors into U.S. bank accounts controlled by the defendant were intended as bribe payments for at least two other PetroEcuador officials. For instance, the defendant sent fund transfers from a third intermediary company's U.S. bank account that he controlled to bank accounts in Panama beneficially owned by the second PetroEcuador official, including $425,000 transferred on or about August 3, 2015 and two transfers of $250,000 on or about August 10, 2015. The defendant also used some of the funds transferred into the intermediary companies' U.S. bank accounts to purchase at least two properties in Miami, Florida for the third PetroEcuador official.

The defendant had numerous meetings with Reyes in Miami, Florida to discuss how Reyes wanted to use the bribe funds that the defendant was receiving and managing for him. The defendant also communicated via email with Reyes about the bribe funds and the purchase of properties by the defendant on Reyes' behalf using bribe funds. Between in or around April 2013 and in or around December 2014, the defendant, using the bribe funds from various PetroEcuador contractors, authorized or made transfers from O&G's account to purchase six real properties in the Southern District of Florida for the benefit of Reyes, including: (1) 11316 NW 79 Lane, Doral, Florida; (2) 14340 SW 156th Avenue, Miami, Florida; (3) 16711 Collins Avenue, Unit 1902, Sunny Isles Beach, Florida; (4) 605 S. Ocean Drive, Hollywood, Florida; (5) 609 S. Ocean Drive, Hollywood, Florida; and (6) 345 Monroe Street, Hollywood, Florida. All six of these properties were titled in the name of O&G and managed by the defendant for the benefit of Reyes.

With the intent to conceal and disguise the proceeds of the illegal bribery scheme, as well as to promote the illegal bribery scheme, the defendant also helped to launder into the United States cash bribe payments that Reyes had received in Ecuador. The defendant did so by creating and signing false and fraudulent invoices purporting to show that O&G was owed money for services

4

rendered, when in truth and in fact no work had been performed by O&G and the invoices were created to justify illegal fund transfers from Ecuador to O&G's account in the United States on behalf of Reyes. For instance, in or around June 2014, the defendant sent Reyes a fraudulent invoice from O&G to an individual in Ecuador for $119,500. The defendant knew that O&G did not provide the services stated in the invoice. The defendant sent this invoice, and others like it, to justify fund transfers from the individual in Ecuador to O&G's United States bank account, including at least approximately $239,000 transferred between in or around May and June 2014. Some of these funds were used by the defendant to purchase real property in the Southern District of Florida for Reyes, as described above. In or around February 2015, O&G was transferred to Reyes and his wife.

The defendant, knowing that his conduct was wrong and unlawful, conducted and attempted to conduct various financial transactions involving interstate and foreign commerce using U.S. shell company bank accounts, knowing that the property involved in the transactions represented the proceeds of the illegal bribery scheme, and acting with the intent to conceal and disguise the true nature, source, location, ownership, and control of the proceeds of the illegal bribery scheme. The defendant, knowing that his conduct was wrong and unlawful, also caused financial transactions from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside the United States, with the intent to promote the illegal bribery scheme.

Date: 8/19/2019

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By: _____

5

J.C.

KAREN ROCHLIN
ASSISTANT UNITED STATES ATTORNEY

ROBERT ZINK
CHIEF, FRAUD SECTION
DEPARTMENT OF JUSTICE

Date: 8/19/19

By: _____
LORINDA LARYEA
ASSISTANT CHIEF
DAVID FUHR
KATHERINE RAUT
TRIAL ATTORNEYS

DEBORAH L. CONNOR
CHIEF, MONEY LAUNDERING & ASSET RECOVERY SECTION
DEPARTMENT OF JUSTICE

Date: 8/19/19

By: _____
RANDALL WARDEN
MARY ANN MCCARTHY
TRIAL ATTORNEYS

Date: 8/13/19

_____
BRIAN BIEBER, ESQ.
ATTORNEY FOR DEFENDANT CISNEROS

Date: 8/13/19

_____
JOSE MELQUIADES CISNEROS ALARCON
DEFENDANT

6

J.C.