## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 19-cr-20284-SMITH

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

**vs.**

**JOSE MELQUIADES CISNEROS ALARCON**

     **Defendant.**

_____/

### DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A REASONABLE SENTENCE

Defendant, **JOSE MELQUIADES CISNEROS ALARCON ("Mr. Cisneros")**, by and through undersigned counsel, files his Sentencing Memorandum and moves this Court, pursuant to 18 U.S.C. § 3553(a), to impose a reasonable sentence, all facts and circumstances considered.

### I.    PROCEDURAL HISTORY

On May 9, 2019, Mr. Cisneros was charged with one (1) count of conspiracy to violate the Foreign Corrupt Practices Act, in violation of 18 U.S.C. § 371 (Count 1), one (1) count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 2), four (4) counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 3-6), and five (5) counts of money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts 7-11). (D.E. 3). On August 19, 2019, pursuant to a written plea agreement, Mr. Cisneros pled guilty to Count 2 of the Indictment.  (D.E. 45).

### II.    INTRODUCTION

Mr. Cisneros understands that he has been charged with, and pled guilty to, a serious Federal offense.  As such, Mr. Cisneros has taken full responsibility for his actions, and he expects to be

held entirely accountable for same. However, there are several mitigating factors which Mr. Cisneros respectfully brings to this Court's attention for its consideration when fashioning the appropriate sentence. A sentence below the advisory guideline range. Not only did Mr. Cisneros accept responsibility for his conduct in a timely manner, but he also cooperated with the Government. Moreover, this is Mr. Cisneros' first ever criminal offense, and, based on his age, criminal history category, and personal characteristics, Mr. Cisneros' possesses virtually no risk of recidivating. Additionally, considering Mr. Cisneros' minor role in the broader criminal scheme, and the sentences received by other defendants in related and similar cases, a downward departure and/or variance in this case is appropriate in order to avoid unwarranted sentence disparities. See 18 U.S.C. § 3553(a)(6); see also PSR ¶ 111.

## III.    ADVISORY GUIDELINES CALCULATIONS

Mr. Cisneros and the Government agree that, pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level in this case is twelve. (See Presentence Investigation Report "PSR" ¶ 37).  Mr. Cisneros and the Government also agree that Mr. Cisneros' base offense level should be increased by eighteen (18) points pursuant to U.S.S.G. § 2B1.1(b)(1)(E) because the amount of the laundered funds was more than $3.5 million and less than $9.5 million.  (See PSR ¶ 37).  Mr. Cisneros and the Government agree that Mr. Cisneros' offense level should be increased by two (2) levels for violating 18 U.S.C. § 1956, and an additional two (2) levels for the offense involving sophisticated laundering pursuant to U.S.S.G. §§ 2S1.1(b)(2)(B) and 2S1.1(b)(3). (See PSR ¶¶ 37-39).  As such, Mr. Cisneros and the Government agree that Mr. Cisneros' adjusted offense level is thirty-six (36). (See PSR ¶¶ 37-39).  Taking into consideration a two (2)-point reduction for Mr. Cisneros' minor role in the scheme, pursuant to U.S.S.G. § 3B1.2(b), (see PSR ¶ 41), and an additional three (3)

point reduction for Mr. Cisneros' timely acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and (b), Mr. Cisneros' total offense level should be thirty-one (31). (See PSR ¶¶ 45-47).

Based upon a total offense level of 31 and a criminal history category of I, Mr. Cisneros' advisory sentencing guideline range should be 108 to 135 months.

## IV.      REQUEST FOR A REASONABLE SENTENCE

As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis in original); United States v. Agbai, 497 F.3d 1226 (11th Cir. 2007) ("[T]rial courts are not permitted to presume that a guideline sentence is reasonable."). Moreover, unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Pursuant to 18 U.S.C. § 3553(a), District Courts must impose sentences that are "sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). According to 18 U.S.C. § 3553(a), "in determining the particular sentence to be imposed[,]" the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A)      reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense;
>>
>> (B)      provides adequate deterrence to criminal conduct;

        (C)     protects the public from future crimes of the defendant; and

        (D)     provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

        (A)     the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

            *             *             *             *

(5) any pertinent policy statement—

            *             *             *             *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

For the reasons stated _infra_, Mr. Cisneros respectfully asks this Court to focus on the principles pronounced by the United States Supreme Court and the factors set forth in 18 U.S.C. § 3553(a), and thereafter impose an appropriate sentence below the advisory guideline range.

## A.      MITIGATING FACTORS

### 1.    Avoiding Unwarranted Sentence Disparities Among Defendants

Senior U.S. Probation Officer Kathryn Gomez recognized:

[Mr. Cisneros] faces a substantially higher guideline imprisonment range (and a statutory maximum penalty of 240 months), which appears to this officer could lead to an unwarranted sentencing disparity should the Court not vary downward. It is noted that [Mr. Cisneros] has been deemed a minor role player in the offense conduct, and he appears to have benefitted from the conduct much less than his

co-conspirators. Accordingly, it appears a downward variance in this case is merited in order to avoid unwarranted sentencing disparities.

(See PSR ¶ 111). 18 U.S.C. § 3553(a)(6) expresses "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" as a factor to consider at sentencing. To assist the Court in avoiding disparities in sentencing, we respectfully submit a comparison of the specific conduct of the other defendants in related cases[1]:

### a.      Marcelo Reyes Lopez (17-20747-cr-Williams)

Marcelo Reyes Lopez ("Lopez"), a foreign official from 2012 through 2016, worked as the contracting manager and subsequently as the General Legal Coordinator of state-controlled oil company PetroEcuador. Lopez abused these positions by demanding millions of dollars in bribes from private companies in order for these private companies to have the opportunity to do business with PetroEcuador. On April 10, 2018, Lopez pled guilty to conspiracy to commit money laundering, and was subsequently sentenced to, inter alia, fifty-three (53) months imprisonment.

### b.      Arturo Escobar Dominguez (18-cr-20108-Altonaga)

Arturo Escobar Dominguez ("Dominguez") was also a foreign official employed by PetroEcuador as the General coordinator of Business Management and Advisor to the Refining Division Management. Dominguez conspired with other foreign officials and private business owners doing business with PetroEcuador, in which Dominguez "received millions of dollars in bribes directly and indirectly in exchange for using their positions to allow companies and individuals obtain and retain business with PetroEcuador." See Unites States v. Dominguez, Factual Proffer in Support of Guilty Plea,18-cr-20108-Altonaga, Doc. 18 p. 2. Dominguez

---

[1] See also PSR ¶¶ 27-33.

received approximately $1,900,000.00 in bribes from companies that conducted business with PetroEcuador. Id. Dominguez subsequently pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and was sentenced to, inter alia, forty-eight (48) months imprisonment.

### c.      Jose Luis De La Paz Roman (19-20004-CR-Cooke)

Jose Luis De La Paz Roman ("Roman"), owned one of the companies that agreed to pay bribes in order to do business with PetroEcuador. In fact, Roman's company, NoLimit, paid over eight (8) million dollars in bribes to PetroEcuador officials in order to secure contracts with PetroEcuador. See Unites States v. De La Paz Roman, Factual Proffer in Support of Guilty Plea,18-cr-20004-cr-Cooke, Doc. 13 p. 2. Roman ultimately pled guilty to conspiracy to violate the Foreign Corrupt Practices Act and was sentenced to, inter alia, thirty-six (36) months imprisonment.

### d.      Jose Larrea (18-cr-20312-MGC)

Jose Larrea ("Larrea"), is a financial advisor who, from approximately November 2016 until February 2018, acted as a "middle man" to facilitate bribery payments from Ramiro Luque ("Luque"), the owner of an Ecuadorian oil and gas services company, to PetroEcuador officials. Larrea used his knowledge and experience as a financial advisor to conceal the nature of transactions that he conducted when facilitating these bribery payments. For example, Larrea created a false promissory note and back-dated receipts to reflect payments on the fraudulent promissory notes that were never made. See United States v. Larrea, Factual Proffer in Support of Guilty Plea,18-cr-20312-MBC, Doc. 8 p. 2. On November 11, 2018, Larrea pled guilty to conspiracy to launder money in violation of 18 U.S.C. 1956(h), and was subsequently sentenced to, inter alia, twenty-seven (27) months imprisonment.

**e.    Juan Andres Baquerizo Escobar (18-cr-20596-DPG)**

Juan Andres Baquerizo Escobar ("Escobar") owned and controlled an Ecuadorian company that provided oil services to PetroEcuador. Escobar conspired with others to pay approximately $1,720,00.00 in bribes to PetroEcuador officials in order to obtain and retain business with the state-controlled oil company. See United States v. Larrea, Factual Proffer in Support of Guilty Plea,18-cr-20596-DPG, Doc. 19 p. 2. On September 12, 2018, Escobar pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and was subsequently sentenced to, inter alia, thirty-six months (36) imprisonment.

These cases are, in no way, presented to minimize Mr. Cisneros' criminal conduct. Rather, we submit that, on a comparative basis, Mr. Cisneros' conduct warrants a significantly less sentence than the harsh advisory Guideline range of 108 to 135 months. Considering the roles and conduct of Lopez, Dominguez, Roman, Larrea, and Escobar, it would offend the notions of justice, proportionality, and the spirit of our Federal sentencing uniformity if Mr. Cisneros would be sentenced to more time in prison than any of the five individuals referenced supra. See United States v. Laenby, 439 F.3d 928, 934 (8th Cir. 2006) (noting that extreme disparities between sentences imposed on coconspirators "not only fails to serve the legislative intent reflected in § 3553(a)(6), [but] also suggests an arbitrary level of decision-making that fails to promote respect for the law[.]"). Mr. Cisneros "has been deemed a minor role player in the offense conduct, and he appears to have benefitted from the conduct much less than his co-conspirators." (PSR ¶ 111). Accordingly, a variance and or departure is necessary "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." United States v. Spoerke, 568 F.3d 1236, 1252 (11th Cir. 2009); see also United States v. Zavala, 300 F. App'x 792, 794 (11th Cir. 2008) (affirming a downward

variance for the defendant who played a minor role in a conspiracy, when the head of the criminal organization, "pursuant to the government's § 5K1.1 motion . . . received a sentence of 188 months' imprisonment because he was able to provide assistance to the government. In considering [the defendant's] sentence, the district court stated its belief that the imposition of a greater sentence than 178, 180 months, would **cause the public to question the justice of a system that imposes a greater sentence on a follower than a leader**.") (emphasis added); United States v. Irey, 612 F.3d 1216, 1220 (11th Cir. 2010) (finding District Court's sentence was unreasonable because it was "seriously out of line with sentences imposed on other defendants" for the same crime."); Unites States v. Tzoc-Sierra, 387 F.3d 978 (9th Cir. 2004) (affirming the District Court's downward departure from guideline range of 46-47 months to 36 months on basis of disparity of sentence received by co-defendants); United States v. Noriega, 40 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999) (granting the defendant's motion to reduce sentence based on "the nature of the confinement and the considerable disparity between Defendant's sentence and the sentences actually served by his co-conspirators.").

### 2.      Defendant's Cooperation and Acceptance of Responsibility

At this time, Mr. Cisneros understands the Government will not be filing a Motion for Downward Departure pursuant to the U.S.S.G. § 5K1.1. Mr. Cisneros is also mindful that his advisory Sentencing Guideline range has been reduced pursuant to U.S.S.G. § 3E1.1 due to his acceptance of responsibility. However, considering Mr. Cisneros' significant cooperation efforts and timely acceptance of responsibility set forth below, we respectfully ask the Court to fashion an appropriate downward variance pursuant to 18 U.S.C. § 3553(a). See United States v. Barner, 572 F.3d 1239, 1250 (11th Cir. 2009) ("Indeed, after Booker, a judge basing a sentence under the considerations outlined in 18 U.S.C. § 3553 may take a defendant's substantial assistance into

account . . . .") (internal citations omitted); see also United States v. Nguyen, 212 F. Supp. 2d

1008, 1031-32 (N.D. Iowa 2002) (noting "extraordinary acceptance of responsibility . . . is an

appropriate theory upon which to base a departure[,]" beyond a sentencing reduction pursuant to

U.S.S.G. § 3E1.1).

18 U.S.C. § 3553(e) provides:

> Upon Motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.  Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

U.S.S.G. §5K1.1 provides:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
>
> a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
>
>> 1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>>
>> 2) the truthfulness, completeness and reliability of any information or testimony provided by the defendant;
>>
>> 3) the extent of the defendant's assistance;
>>
>> 4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>>
>> 5) the timeliness of the defendant's assistance.

Mr. Cisneros has clearly demonstrated that he takes complete responsibility for his

actions by, inter alia, admitting his guilt and fully cooperating with the Government. Mr.

Cisneros was debriefed extensively, at which time he provided valuable, material, and detailed information to the Government. Mr. Cisneros' assistance to the Government has been truthful, thorough, organized, and cogent. Mr. Cisneros has made every possible effort to assist law enforcement in prosecuting this case.

### 3. Mr. Cisneros' Low Risk of Recidivism

Pursuant to 18 U.S.C. § 3553(a)(2)(B)–(C), in fashioning an appropriate sentence, the District Court must consider the need for the sentence to "afford adequate deterrence to criminal conduct[,]" and "to protect the public from further crimes of the defendant[.]"  18 U.S.C. § 3553(a)(2)(B)–(C).  As such, Mr. Cisneros respectfully asks this Court to vary downward from the advisory guidelines range due to his low risk of recidivism.

The United States Supreme Court has recognized that a defendant's likelihood to engage in future criminal conduct is a central factor that Courts must assess when imposing a sentence. Pepper v. United States, 562 U.S. 476 (2011), (citing 18 U.S.C. §§ 3553(a)(2)(B)–(C)); Gall v. United States, 552 U.S. 38, 59 (2007) ("Gall's self-motivated rehabilitation . . . lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts.").  Similarly, the Eleventh Circuit has approved of District Courts granting downward variances based on a defendant's low risk of recidivism.  See United States v. Monetti, 705 F. App'x 865, 869 (11th Cir. 2017) (noting the District Court granted the defendant a downward variance, in part, based on his low risk of recidivism); see also United States v. Campbell, 762 F. App'x 877, 879 (11th Cir. 2019) (noting that the District Court's "44-month downward variance reflected the [C]ourt's consideration of Campbell's characteristics (including his age, low risk of recidivism, and family relationship) and of the seriousness of his criminal history[.]").

Mr. Cisneros, now fifty-eight (58) years of age, but for the conduct which brought us here, has led an otherwise law-abiding life.  It is both just and necessary to consider Mr. Cisneros' age when determining his likelihood of recidivism because "[t]he positive correlation between age and recidivism is impossible to deny."  United States v. Nellum, No. 2:04-CR-30-PS, 2005 WL 300073, at *8–9 (N.D. Ind. Feb. 3, 2005) (quoting U.S.S.C. Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at *12 http://www.ussc.gov/publicat/Recidivsm-General.pdf)).   Further, it has been observed that "[r]ecidivism rates decline consistently as age increases."  Id.; see also United States v. Green, Nos. CR-2-90-012 (001), CR-2-00-106 (001), 2007 WL 869725, at *9 (S.D. Ohio Mar. 19, 2007) ("[D]istrict [C]ourts have routinely considered a defendant's age as part of their analysis on the grounds that older defendants exhibit markedly lower rates of recidivism compared to younger defendants.").   Indeed, "[a]ccording to the National Institute of Justice, 'the prevalence of offending tends to increase from late childhood, peak in the teenage years (from 15 to 19) and then decline in the early 20s.'"  U.S.S.C.,   The Effects of Aging on Recidivism Among Federal Offenders, at *10, (December 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf [hereinafter Effects of Aging on Recidivism].

In the instant mater, Mr. Cisneros has a criminal history score of 0 which makes him a category I offender.  Such a score renders Mr. Cisneros with a 6.2% likelihood of recidivism. See U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at *28.  However, based on Mr. Cisneros' lack of criminal history and demonstrated remorse, we respectfully submit that the true likelihood of recidivism here is as

close to 0% as an individual can be. Accordingly, Mr. Cisneros respectfully requests this Court acknowledge that his minimal risk of recidivism warrants the issuance of a downward variance.

## V.    CONCLUSION

"In order to impose a reasonable sentence, this honorable Court should consider the factors of 18 U.S.C. § 3553 and the specific facts surrounding the instant case." United States v. Williams, 435 F.3d 1350, 1356 (11th Cir. 2006).  The mitigating factors raised above are not meant in any way to detract from Mr. Cisneros' full acceptance of his responsibility, but rather to provide the Court with a detailed explanation regarding the context of Mr. Cisneros' case.  For the reasons set forth above, a downward departure or variance is warranted in Mr. Cisneros' case, and justice will be fairly tempered by this Court's understanding and application of our judicial system's respect for uniformity in sentencing.  Without a doubt, considering the Guidelines, this is the appropriate case for this Court's exercise of discretion.

WHEREFORE, Defendant, **JOSE MELQUIADES CISNEROS ALARCON**, prays that this Honorable Court will impose a reasonable sentence which will be "sufficient, but not greater than necessary" to achieve the goals enunciated in 18 U.S.C. § 3553(a).

Respectfully submitted,

**GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue
Suite 3200
Miami, Florida 33131
Telephone #: (305) 416-6880
Facsimile #: (305) 416-6887
Attorney for Defendant
Brian.Bieber@gray-robinson.com


By: s/Brian H. Bieber
    BRIAN H. BIEBER
    Florida Bar No. 8140

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October <u>14</u>, 2019, I electronically filed the foregoing Sentencing Memorandum and Request for Reasonable Sentence with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Brian H. Bieber
BRIAN H. BIEBER
