UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-CR-20284-RS

UNITED STATES OF AMERICA

v.

JOSE MELQUIADES CISNEROS ALARCON,

Defendant.

_____/

**POSITION OF THE UNITED STATES ON SENTENCING AND
OBJECTIONS AND CLARIFICATIONS TO PRESENTENCE INVESTIGATION REPORT**

The United States of America, by and through the United States Department of Justice, Criminal Division, Fraud Section and Money Laundering and Asset Recovery Section (the "government"), respectfully submits its position regarding the sentencing of the defendant, JOSE MELQUIADES CISNEROS ALARCON, and its objections and clarifications to the Presentence Investigation Report ("PSR"). The government recommends that, after consideration of the defendant's individual circumstances under the United States Sentencing Guidelines (the "Guidelines") and the factors set forth in 18 U.S.C. § 3553(a), the Court impose a sentence of incarceration at the low end of the Guidelines range.

**I.      Background**

Between approximately 2013 and 2015, the defendant engaged in a money laundering conspiracy designed to conceal and promote bribe payments to Ecuadorian officials, in violation of the Foreign Corrupt Practices Act ("FCPA") and Ecuadorian bribery law. The conspiracy resulted in approximately $4.4 million in bribes promised or paid to officials of PetroEcuador, the state-owned and state-controlled oil company of Ecuador.

Although the conspiracy focused on laundering bribe payments to Ecuadorian officials, the

defendant and his co-conspirators did much of their work in the Miami area.  For example, in furtherance of the scheme, the defendant and his co-conspirators, including his co-defendant Armengol Alfonso Cevallos Diaz ("Cevallos"), agreed to create and created a shell company in this District for the benefit of Marcelo Reyes Lopez ("Reyes"), a PetroEcuador official; opened a bank account in this District for the shell company; transferred proceeds of the bribery scheme into that bank account; and used the proceeds of the bribery scheme to purchase several Miami-area properties for Reyes and another senior PetroEcuador official.

The defendant was charged in an eleven-count indictment on May 9, 2019, alleging a conspiracy to violate the FCPA, conspiracy to commit money laundering, and nine counts of international promotional and concealment money laundering.  DE 3.  Pursuant to a plea agreement with the government, the defendant pleaded guilty to Count 2 of the indictment (conspiracy to commit money laundering) on August 19, 2019.  DE 45.  The Court is scheduled to sentence the defendant on October 28, 2019.

## II.      Presentence Investigation Report

The United States offers the following objections and clarifications to the draft PSR submitted by the Probation Officer (DE 52), and the following responses to the defendant's objections and clarifications (DE 57).

### A.      Objections and Clarifications to the PSR

#### 1.      Page 2 Clarification

On page 2 of the PSR, the maximum term of imprisonment for a violation of 18 U.S.C. § 1956(h) is listed as 20 months.  The correct maximum term of imprisonment under this statute is 20 years.

#### 2.      Paragraph 28 Objection

At Paragraph 28 of the PSR, the Probation Officer recommends that the defendant is

2

entitled to a minor participant adjustment pursuant to Section 3B1.2(b) of the Sentencing Guidelines. The defendant argues the same in his Sentencing Memorandum. DE 58. The defendant is not entitled to this adjustment.

When evaluating a defendant's role in the offense under Section 3B1.2(b), the Court "should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second [his] role as compared to that of other participants in [his] relevant conduct." *United States v. Rodriguez De Varon*, 175 F.3d 930, 940 (11th Cir. 1999). "The defendant must prove his minor role by a preponderance of the evidence." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010) (citing *Rodriguez De Varon*, 175 F.3d at 939). Additionally, "a defendant is not automatically entitled to a minor role adjustment merely because [he] was somewhat less culpable than the other discernable participants. Rather, the district court must determine that the defendant was less culpable than *most other participants* in [his] relevant conduct." *Rodriguez De Varon*, 175 F.3d at 944 (emphasis in original). The Court further explained:

> [A] defendant must prove that [he] played a minor role in the relevant conduct attributed to [him]. . . . [w]here the relevant conduct attributed to a defendant is identical to [his] actual conduct, [he] cannot prove that [he] is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which [he] was a minor participant but for which [he] was not held accountable.

*Id.* at 941. "A minor participant must be peripheral to the advancement of the criminal activity." *United States v. Martinez-Larraga*, 517 F.3d 258, 272 (5th Cir. 2008).

The defendant here argues that he played a "minor role in the broader scheme." DE 58:2. While former PetroEcuador officials Reyes and Juan Andres Escobar Dominguez ("Escobar") have admitted to participation in a broader corruption and money laundering conspiracy involving bribes from other sources, this defendant was only charged and held accountable for relevant

conduct for the funds he personally laundered or conspired to launder.  Thus, under the requirement of *Rodriguez De Varon* to evaluate role in the offense adjustments in the context of the defendant's relevant conduct, the broader scope of the corruption and money laundering schemes to which Reyes and Escobar admitted is not relevant to whether this defendant was a minor participant in the misconduct for which he is being held accountable.  *See United States v. Maggi*, 44 F.3d 478, 483 (7th Cir. 1995) (denying a minor role reduction and holding that while the defendant may have played a relatively small role in her significant other's drug enterprise, she was a central participant in the events underlying the money laundering and obstruction counts to which she pled guilty, including undertaking to transact business with her significant other's drug money once he was imprisoned and conspiring to hide his assets and documents while he was imprisoned).

The Commentary to the Guidelines outlines several factors a Court should consider in determining whether to apply a reduction under Section 3B1.2, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;

> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and,

> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt n. 3(C).  Taken as a whole, and in the context of the relevant conduct attributed to the defendant, consideration of these factors weighs against application of a minor role adjustment.

Indeed, the defendant played a prominent role in the money laundering scheme to which he pled guilty.  He exercised control over bank accounts and corporate entities used in the money laundering scheme.  He transferred or caused the transfer of hundreds of thousands of dollars of bribe money for the benefit of Ecuadorian government officials on multiple occasions through those accounts and entities.  He participated in numerous meetings with Reyes and others regarding the scheme.  He purchased properties for Reyes's benefit through the shell company and its bank account that the defendant opened and controlled in the United States specifically for that purpose, and then managed those properties on Reyes's behalf.  And he created and signed false and fraudulent invoices which were used to launder cash bribe payments out of Ecuador and into the United States.  Put simply, the defendant fully understood the scope and structure of the criminal activity—money laundering of bribe proceeds—which he perpetuated and advanced, and he exercised decision-making authority in doing so.

As to the nature and extent of his participation, the defendant's conduct spanned a significant period of time from in or around February 2013 to in or around August 2015 and included a series of active steps in furtherance of the scheme throughout that period.  As to the final factor, the defendant stood to and did benefit from his criminal activity.  The defendant received a fee of at least approximately $50,000 for his participation in the laundering scheme.

Courts have found that money laundering defendants who played much smaller roles than the defendant also did not qualify for a minor role adjustment.  One such case involved a money launderer who merely stored cash at his home and "discussed cash transfers and drug supply over the phone with co-conspirators."  *United States v. Gomez-Encarnacion*, 885 F.3d 52, 56-57 (1st Cir. 2018).  Similarly, courts have found that intermediaries are not necessarily minor participants. In *United States v. Allibhai*, 939 F.2d 244, 254 (5th Cir. 1991), a money laundering defendant who

played the "important role[s]" of relaying messages between a co-conspirator and their clients, counting money, and transporting money on one occasion did not merit a minor participant reduction.

For these reasons, the defendant is not entitled to a minor role in the offense adjustment.

### 3.   *Paragraph 34 Clarification*

The government is not pursuing restitution in this case because there are no identifiable victims.

### 4.   *Paragraph 37 Clarification*

The PSR Sentencing Guidelines calculation includes a two-level increase to the defendant's base offense level for an offense that involved more than one bribe.  Pursuant to the defendant's plea agreement, the government is not seeking to increase the defendant's Guidelines calculation on this basis.

### 5.   *Paragraph 111 Clarification*

The PSR incorrectly attributes Reyes's base Guidelines offense level of 8 to the fact that Reyes is not a U.S. citizen and was not in the United States during his criminal acts.  The correct reason for Reyes's base offense level of 8 is that, because Reyes's money laundering conviction was predicated on his receipt of bribes while he was a foreign official, Reyes did not commit or would not be accountable for the underlying FCPA offense.  *See* U.S.S.G. §2S1.1(a).  The FCPA criminalizes the payment of bribes, but foreign officials cannot be prosecuted under the FCPA for receiving bribes.  *See, e.g.*, *United States v. Castle*, 925 F.2d 831, 831 (5th Cir. 1991).

### B.   **Responses to Defendant's Objections and Clarifications**

### 1.   *Paragraph 58*

The government does not dispute the defendant's factual correction, but notes that it does not alter the defendant's role in the offense and should not impact the determination of his sentence.

2.      *Paragraph 111*

To the extent the defendant seeks a downward departure or variance based upon his cooperation, the government reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation known to the Court.  The government is not making such a motion under Section 5K1.1 of the Guidelines.  However, if the government later determines, in its sole and unreviewable judgment, that doing so is appropriate, the government may move the Court subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

In addition, the defendant's timely acceptance of responsibility and assistance to authorities in the investigation and prosecution of his own misconduct is reflected in the PSR's recommended three-level reduction in the defendant's total offense level.

## III.   **Argument**

While the "Guidelines are purely advisory, the Court must consider the Guidelines and the factors set forth in 18 U.S.C. § 3553(a) when determining the appropriate sentence.  *United States v. Booker*, 543 U.S. 220, 264 (2005).  The 11th Circuit has held that the Court "may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence."  *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006).

### A.      **The Guidelines**

The government calculates the defendant's total offense level under the Guidelines to be 31.  With the exception of the Probation Officer's two-point minor-role adjustment under Section 3B1.2(b) of the Guidelines and the two-point addition for more than one bribe under Section 2C1.1(b)(1) of the Guidelines, the government agrees with the defendant and the PSR's calculation of the defendant's offense level calculation.

Based on a total offense level of 31 and the defendant falling within Criminal History

Category I, the defendant's advisory Guidelines range is 108 to 135 months of imprisonment.

### B.     The Section 3553(a) Factors

Title 18, United States Code, Section 3553(a) requires the Court to consider, in addition to the defendant's Guidelines range, the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to:  reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).  The Court must also consider the types of sentences available, pertinent policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a)(3)-(7).

Consideration of these factors indicates, in the government's view, that a sentence at the low end of the Guidelines range is appropriate in this case.  The defendant justifies his request for a departure from the Guidelines by pointing to the sentences other defendants have received in related PetroEcuador bribery and money laundering cases, the defendant's cooperation and acceptance of responsibility, and his asserted low risk of recidivism.  Although the government recognizes that courts in this District have imposed below-Guidelines range sentences on other participants in the PetroEcuador scheme, the government respectfully submits that, considering the Section 3553 factors, a low-end Guidelines range sentence is appropriate.  First, the nature and circumstances of the defendant's offense are serious.  In furtherance of the scheme to launder bribe payments to PetroEcuador officials, the defendant opened and operated a Florida-based shell company, created false invoices from that company to conceal cash bribe payments, and opened and maintained a bank account in Miami for the shell company, among other things.

Approximately $4.4 million flowed through this and other bank accounts controlled by the defendant and his co-conspirators. The defendant also facilitated the acquisition of six properties in the Southern District of Florida, knowing that they were all for the benefit of Reyes and that they were purchased using bribe funds.

Second, a low-end Guidelines range sentence would not create unwarranted sentencing disparities between defendants who have been found guilty of similar conduct. While those other sentences are relevant to this Court's consideration under the Guidelines, the cases cited by the defendant differ in material ways from the case before the Court. One difference between some of those cases and the defendant's case is the timing of the dispositions and charging decisions by the government.[1] For instance, Jose Luis de la Paz Roman ("De la Paz"), a bribe-paying businessman, was not charged with money laundering offenses; instead, he pleaded guilty to an information charging him with conspiracy to violate the FCPA under 18 U.S.C. § 371, and his advisory range was therefore based on different Guidelines provisions. Additionally, the amount of laundered funds, which often drives the Guidelines calculations in money laundering cases, explains, in part, why other defendants had a lower base offense level than the defendant in this case. Moreover, as foreign officials who received bribes, the Guidelines involving the FCPA did not apply to Reyes and Escobar, resulting in a base offense level four points below this defendant's. Thus, while the Court must take care to avoid *unwarranted* sentencing disparities, the Guidelines range applicable to the defendant is based on his specific offense characteristics and his specific and largely undisputed role in the bribery and money laundering scheme.

---

[1] Courts have held that differences resulting from the government's charging decisions do not create the unwarranted sentencing disparities Section 3553(a) seeks to preclude. *See United States v. Molina*, 530 F.3d 326, 331 (5th Cir. 2008) (disparity resulting from prosecutorial decisions was not unwarranted because the government may choose between different statutory penalty schemes applying to the same conduct).

Third, while the defendant correctly notes that he agreed to plead guilty following his indictment, the total offense level in the PSR already accounts for this acceptance of responsibility. As stated above, with respect to the defendant's cooperation, the government is not moving at this time for a downward departure from the calculated Guidelines range.

Finally, the remaining Section 3553(a) factors, including, among others, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment and adequate deterrence, and protect the public, counsel against a downward variance. *See* 18 U.S.C. § 3553(a)(2).  Operating from Miami, the defendant participated in a conspiracy to bribe public officials in Ecuador, undermining the integrity of the U.S. banking system and the rule of law in the United States and Ecuador by helping to perpetuate a pervasive culture of bribery involving PetroEcuador.  The Eleventh Circuit has held that such crimes deserve punishment commensurate with their seriousness:

> Because economic and fraud-based crimes are "more rational, cool, and calculated than sudden crimes of passion or opportunity," these crimes are "prime candidate[s] for general deterrence." . . .  Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.
>
> * * *
>
> Indeed, the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense. . . .

*United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (certain internal citations omitted). In *Martin*, the Eleventh Circuit also cautioned against sentences that leave the impression that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty."  *Id.*  Here, an appropriately serious and fair sentence is necessary for effective deterrence.

**IV.      Conclusion**

For the foregoing reasons, the United States respectfully recommends that the Court

impose a sentence of incarceration at the low end of the Guidelines range.

Respectfully submitted,


ROBERT ZINK
CHIEF, FRAUD SECTION
DEPARTMENT OF JUSTICE

By:        /s/ Jonathan Robell
           Lorinda Laryea
           David Fuhr
           Assistant Chiefs
           Katherine Raut
           Jonathan Robell
           Trial Attorneys
           U.S. Department of Justice
           1400 New York Avenue NW
           Washington, DC 20005
           Telephone: (202) 616-3504
           david.fuhr@usdoj.gov
           lorinda.laryea@usdoj.gov
           katherine.raut@usdoj.gov
           jonathan.robell@usdoj.gov



DEBORAH L. CONNOR
CHIEF, MONEY LAUNDERING & ASSET
RECOVERY SECTION
DEPARTMENT OF JUSTICE


By:        /s/ Mary Ann McCarthy
           Randall Warden
           Mary Ann McCarthy
           Trial Attorneys
           U.S. Department of Justice
           Telephone: (202) 598-2802
           randall.warden@usdoj.gov
           mary.mccarthy@usdoj.gov

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I caused a true and correct copy of the foregoing to be served

using the CM/ECF, which will effect service on all counsel of record.


/s/ Jonathan Robell_____
Jonathan Robell
U.S. Department of Justice